**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DOUGLAS THOMAS, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-26-0057 |
| MICHAEL RISER & JOHNSON GABRIEL, | * | |
| | * | |
| *Defendants*. | * | |

* * * * * * * * * * * * *

**<u>MEMORANDUM ORDER</u>**

Plaintiff Douglas Thomas brought this action against Officers Michael Riser and Johnson Gabriel of the Baltimore Police Department, alleging common law claims for false arrest and false imprisonment, as well as constitutional claims for the violation of his rights under the Fourth Amendment to the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights. Presently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, In the Alternative, for Summary Judgment. (ECF No. 14). Defendants' move for summary judgment on the ground that Plaintiff was arrested pursuant to a facially valid arrest warrant issued by the Commonwealth of Pennsylvania, thereby negating any claim that Plaintiff was arrested without legal authority or justification. *See generally* (ECF No. 14). Despite the passage of four months, Plaintiff has not responded to Defendants' Motion (ECF No. 14). For the reasons that follow, Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment (ECF No. 14) is hereby

GRANTED.[1] Judgment shall be ENTERED for Defendants, and this case shall be CLOSED.

## BACKGROUND

The Court construes Defendants' Motion (ECF No. 14) as one for summary judgment. Accordingly, the Court first recounts the allegations set forth in Plaintiff's Amended Complaint (ECF No. 8), then supplements those allegations with additional facts derived from the evidence submitted by Defendants. *See* (ECF No. 14).

### I. Plaintiff's Amended Complaint

At approximately 11:00 p.m. on January 30, 2023, Plaintiff Douglas Thomas ("Plaintiff" or "Thomas") alleges that he was involved in a motor vehicle accident in Baltimore City, Maryland. (ECF No. 8 ¶ 6). After the accident, Thomas was laying on the ground complaining of chest pains when Baltimore City Police Officers Michael Riser ("Officer Riser") and Johnson Gabriel ("Officer Gabriel") (collectively, "Defendants") arrived on the scene. (*Id.* ¶ 7). Thomas alleges that, after rendering medical aid to him, an unidentified medic informed Officer Riser and Officer Gabriel that she smelled alcohol on Thomas's breath. (*Id.* ¶ 9). However, according to Thomas, neither Officer Riser nor Officer Gabriel detected an odor of alcohol emanating from him, and no eyewitness indicated Thomas was driving erratically before the accident. (*Id.* ¶¶ 8, 10).

Thomas contends that he was then arrested for driving under the influence of alcohol. (*Id.* ¶ 10). Thomas was then transported to the hospital to receive medical attention. (*Id.* ¶

[1] The Court construes Defendant's Motion (ECF No. 14) as one for summary judgment. Accordingly, the Court considers the materials submitted by the Defendants as exhibits to their Motion in making its ruling. *See* (ECF No. 14).

11). Thomas asserts that he explicitly told the Defendants he was not intoxicated while on the way to the hospital and requested that Defendants administer him a Breathalyzer test, but Defendants refused. (*Id.* ¶ 11). While at the hospital, Thomas alleges that he again asked Defendants to test his breath or blood for the presence of alcohol, but no such test was completed. (*Id.* ¶ 12). Thomas asserts that this incident resulted in criminal charges being filed against him in the District Court of Maryland for Baltimore City (Case Nos. K48133 & K48134), but those charges were ultimately dismissed on September 18, 2023. (*Id.* ¶¶ 14, 16).

Thomas now contends that his arrest was made without probable cause or a warrant in violation of the United States Constitution and the Maryland Declaration of Rights. (*Id.* ¶¶ 16–17). Thomas alleges that Officer Riser and Officer Gabriel knew or should have known at the time of arrest that the abovementioned facts did not suffice to establish probable cause. (*Id.* ¶ 19).

## II. Defendants' Motion for Summary Judgment

In their Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 14), Defendants contend that they are entitled to judgment as a matter of law on each of Plaintiff's claims on the ground that: (1) body worn camera ("BWC") footage clarifies that neither Officer Riser nor Officer Gabriel arrested Defendant, (2) incident reports and other documentation verify that Plaintiff was not arrested for driving under the influence, and (3) Plaintiff was arrested based on an outstanding warrant issued by the Commonwealth of Pennsylvania, foreclosing Plaintiff's claims for false arrest and other constitutional violations arising from the incident. (ECF No. 14 at 2, 12–16). Defendants submitted ten exhibits in

support of their arguments. *See* (ECF No. 14, Exs. A–J). The Court recites facts from those exhibits as necessary to decide Defendants' Motion.

**A. Body Worn Camera Footage**

Defendants submitted the BWC footage of Officer Riser and Officer Gabriel from the evening and incident described in Plaintiff's Amended Complaint (ECF No. 8). *See* (ECF No. 14, Exs. A–C (on file with chambers)).

Officer Riser's BWC footage begins at approximately 23:16:05 (11:16 p.m.) on January 30, 2023. (ECF No. 14, Ex. A). At the start of the video, a black four-door Nissan Sentra with significant front-end damage is stopped in the middle of the road. (*Id.* at 23:16:55–59). The driver of the vehicle, later determined to be Plaintiff Douglas Thomas, is lying on the sidewalk surrounded by several people. (*Id.* at 23:16:59–23:17:09). Next, a paramedic approaches Officer Riser, and Officer Riser informs the paramedic that Thomas exited the vehicle on his own. (*Id.* at 23:17:09–13). An unidentified individual then informs the paramedic that Thomas is complaining of chest pain. (*Id.* at 23:17:15–17). The paramedic remains with Thomas while Officer Riser communicates with dispatch, directs traffic around the incident, and asks bystanders to move their vehicles. (*Id.* at 23:17:24–23:18:59).

When Officer Riser returns to where Thomas was laying on the ground, Thomas is lifting himself onto a stretcher with the assistance of first responders. (*Id.* at 23:19:03–24). Officer Riser then has his first interaction with Thomas, asking Thomas, "you got something you want to bring to the hospital?," to which Thomas responds, "I got everything on me, my phone." (*Id.* at 23:19:41–46). Thomas is then taken to an ambulance while Officer Riser remains standing by the Nissan Sentra. (*Id.* at 23:19:55–23:20:00). Approximately 40 seconds

later, the paramedic approaches Officer Riser and, in reference to Thomas, informs Officer Riser that while they "obviously can't do blood alcohol testing on him," Thomas "reeks." (*Id.* at 23:20:40–44).

Approximately 12 minutes later, Officer Riser walks over to the ambulance where Thomas is located. (*Id.* at 23:32:25–35). The paramedic and Officer Riser briefly discuss what hospital Thomas will be transported to, then Officer Riser says to Thomas, "Listen man, you're alright right now, alright? You got your ID on you? Your license?" (*Id.* at 23:32:41–46). Thomas responds, "Yeah, I got my ID," to which Officer Riser says, "Alright. Imma meet you down there, alright, and we'll talk," referring to the hospital where Thomas is going. (*Id.* at 23:32:46–50). After Thomas is transported to the hospital, (*id.* at 23:35:02), Officer Riser then remains at the scene for approximately one hour before his BWC footage ends at 12:30 a.m. on January 31, 2023. (*Id.* at 23:33:08–00:32:58).

Officer Riser's BWC briefly turns back on hours later, at approximately 3:28 a.m. on January 31, 2023. (ECF No. 14, Ex. C at 03:28:55 (on file with chambers)). Officer Riser is walking towards the exit of University of Maryland Shock Trauma with a hospital employee and another unidentified police officer who is pushing Thomas in a wheelchair. (*Id.* at 03:29:30–49). Once outside, Officer Riser stands with Thomas as another officer pulls over a patrol car. (*Id.* at 03:30:28–40). Officer Riser then helps Thomas into the back of the patrol car, (*id.* at 03:31:09–22), and says, "good luck to you Mr. Thomas," before closing the door. (*Id.* at 03:31:55–59). No arrest of Thomas appears on Officer Riser's BWC footage. *See generally* (ECF No. 14, Exs. A & C (on file with chambers)).

Officer Gabriel's BWC footage begins with him driving towards the scene of the accident at approximately 11:15 p.m. on January 30, 2023. (ECF No. 14, Ex. B at 23:14:50 (on file with chambers)). Upon arrival, Officer Gabriel speaks with Officer Riser, who asks Officer Gabriel to help direct traffic around the accident scene. (*Id.* at 23:16:44–59). Officer Gabriel then begins directing traffic. (*Id.*). Officer Gabriel remains at the accident scene for the duration of his BWC footage, and there is no interaction between Officer Gabriel and Thomas captured on the footage. *See generally* (ECF No. 14, Ex. B (on file with chambers)). No arrest of Thomas appears on Officer Gabriel's BWC footage, either. *See generally* (ECF No. 14, Ex. B (on file with chambers)).

**B. BPD Incident Report and Other Supporting Documentation**

After the motor vehicle accident, Thomas was transported by ambulance to University of Maryland Shock Trauma. (ECF No. 14-5 at 4). At some time around 3:30 a.m., shortly before Thomas is seen on Officer Riser's BWC footage escorting Thomas to a patrol car, Officer Riser checked Thomas's driver's license and discovered that there was an active warrant out for Thomas's arrest issued by the Commonwealth of Pennsylvania. (ECF No. 14-6 at 2–3). The warrant was issued on November 9, 2022, in a Pennsylvania case in which Thomas was charged with one count of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Dangerous Substance. (ECF No. 14-7 at 2–3). As a result of the outstanding warrant, Thomas was taken into custody by BPD officers and transported to central booking. (ECF No. 14-6 at 3–4).

Officer Riser completed an incident report concerning the motor vehicle accident at approximately 10:42 a.m. on January 31, 2023. *See* (ECF No. 14-6). In the report, Thomas is

identified as an arrestee, and the "Primary Offense For Arrest" listed is "90Z – Service of Warrant (Not Associated with a BPD CC#)." (*Id.* at 1). The Commonwealth of Pennsylvania is listed as a "victim" in the report. (*Id.* at 2).

Aside from arresting Thomas on the outstanding Pennsylvania warrant, Officer Riser issued Thomas two traffic citations in connection with the motor vehicle accident. *See* (ECF No. 14-8 at 1–2). The first citation (No. KK48134) was for Driving on a Suspended License, and the second citation (No. KK48133) was for Driving Under the Influence of Alcohol. (*Id.*); *see also* (ECF No. 14-5 (State of Maryland Motor Vehicle Crash Report) ("[Operator] [of] V1 had a suspended license and was issued citation KK48133 and citation KK48134 for driving under the influence of alcohol due to him admitting that he did have a jello shot.")). At the bottom of each citation right above Thomas's signature, there is warning that states, "**WARNING – FAILURE TO SIGN MAY LEAD TO YOUR ARREST.**" (ECF No. 14-8 at 1–2). Additionally, directly below the warning but above Thomas's signature, the citations state: "I sign my name as a receipt of a copy of this citation and not as an admission of guilt but my failure to appear may result in the issuance of a warrant for my arrest." (*Id.*). Maryland Judiciary Case Search records reflect that a nolle prosequi was entered for both citations on September 18, 2023. *See* (ECF No. 14-11). Relatedly, Pennsylvania court records indicate that Thomas entered a plea of guilty to the Pennsylvania charge on November 21, 2024, and received a sentence of three years' probation. (ECF No. 14-10 at 3, 7–8).

### III. Procedural History

Thomas initiated this action on January 8, 2026, by filing in this Court a four-Count Complaint (ECF No. 1) alleging against Defendants common law claims for false arrest

(Count I) and false imprisonment (Count II), as well as constitutional claims for the violation of rights protected by the United States Constitution (Count III) and the Maryland Declaration of Rights (Count IV). (ECF No. 1 ¶¶ 23–46). On June 4, 2026, Thomas filed an Amended Complaint (ECF No. 8) to correct the name of Officer Johnson. (ECF No. 8). On July 15, 2026, Defendants filed the present Motion to Dismiss Plaintiff's Amended Complaint or, In the Alternative, for Summary Judgment. (ECF No. 14). Thomas has not filed a response.

The Court has reviewed the parties' submissions on the record to date and finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' Motion (ECF No. 14), construed as one for summary judgment, is GRANTED. Accordingly, judgment shall be ENTERED in favor of Defendants on all claims.

## STANDARD OF REVIEW

Under Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the pleadings are presented to and considered by the Court on a Rule 12(b)(6) motion to dismiss, the "motion must be treated as one for summary judgment under Rule 56." Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In demonstrating that a material dispute of fact does or does not exist, a party must support that assertion by "citing to particular parts of materials in

the record, including [*inter alia*] depositions, documents, [and] electronically stored information." FED. R. CIV. P. 56(c)(1)(A).

On a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. 380. Therefore, "when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court 'view[s] the facts in the light depicted by the videotape.'" *Hall v. Washington Metro. Area Transit Auth.*, 33 F. Supp. 3d 630, 632 (D. Md. 2014) (Grimm, J.) (quoting *Scott*, 550 U.S. at 381). This means that "when a videotape 'clearly depict[s] the events at issue, [that video] will prevail over contrary evidence submitted by either side." *Hall*, 33 F. Supp. 3d at 632 (quoting *Glascoe v. Sowers*, No. ELH-11-2228, 2013 WL 5330503, at *5 (D. Md. Sep. 20, 2013)).

**ANALYSIS**

Thomas claims that he was falsely arrested, falsely imprisoned, and otherwise suffered violations of his federal and state constitutional rights[2] by Baltimore Police Department

---

[2] Count III of Thomas's Complaint (ECF No. 8) alleges violations of his federal constitutional rights "includ[ing] but [] not limited to those protected by the Fourth Amendment to the U.S. Constitution." (ECF No. 8 at 7). The Court interprets Count III to state a claim for violation of Thomas's Fourth Amendment rights as applied to the states through the Fourteenth Amendment's Due Process Clause. *See Mapp v. Ohio*, 367 U.S. 643, 656–57 (1961). Count IV alleges violations of Thomas's rights under Articles 24 and 26 of the Maryland Declaration of Rights, which prohibit deprivation of liberty without due process of law and warrantless arrests, respectively. *See* (ECF No. 8 at 8). The Court of Appeals of Maryland has clarified that both Article 24 and 26 govern the constitutionality of arrests, with the former—Article 24—applying to

("BPD") Officers Riser and Gabriel following a traffic accident in January 2023. *See generally* (ECF No. 8). However, the undisputed evidence clearly demonstrates that Thomas was in fact arrested for an outstanding warrant issued by the Commonwealth of Pennsylvania. *See* (ECF No. 14-6 at 1–3 (BPD Incident Report) (indicating offense of arrest was service of out-of-state warrant and "[n]ot associated with a BPD CC#")); (ECF No. 14-7 at 2–3 (Criminal Docket for Pennsylvania Case No. MJ-19303-CR-99-2022) (indicating fugitive declaration was filed November 9, 2022)).

It is well established in Maryland that when an arrest and subsequent detention are undertaken pursuant to a facially valid warrant, there is no violation of the Fourth Amendment. *See Peacock v. Mayor and City Council of Baltimore*, 199 F. Supp. 2d 306, 309 (D. Md. 2002) (Motz, J.); *Ashton v. Brown*, 339 Md. 70, 120 (1995) ("An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper." (citing *Brewer v. Mele*, 267 Md. 437, 440, 298 A.2d 156, 159 (1972))); *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989) (affirming district court's grant of summary judgment to deputy sheriff defendants on plaintiff's 47 U.S.C. § 1983 claim "[b]ecause Mitchell's arrest was made pursuant to a facially valid warrant"). The existence of a facially valid warrant forecloses claims for both false arrest and false imprisonment. *See Peacock*, 199 F. Supp. 2d at 310 (dismissing claim for false arrest because Peacock was arrested pursuant to a facially valid warrant); *Ashton*, 339 Md. at 120, 660 A.2d at

situations where an arrest may be made with probable cause, but the arrest violates some other constitutional guarantee, for example, the arrest (i) is made pursuant to an unconstitutional statute, (ii) is in violation of the Equal Protection Clause, or (iii) is in violation of First Amendment guarantees. *Ashton v. Brown*, 339 Md. 70, 98, 660 A.2d 447, 461 (1995).

472 (noting relevant inquiry in false imprisonment context is whether arrest was legally justified and that arrests made under a facially valid warrant are legally justified in Maryland). The Fourth Circuit has also specifically held that an arresting officer has no affirmative obligation to investigate the arrestee's claims as to the warrant's invalidity. *See Mitchell*, 872 F.2d at 579 (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

Here, Thomas does not allege that the Pennsylvania warrant for which he was arrested was invalid in his Amended Complaint (ECF No. 8), nor did the Court perceive Thomas to challenge his arrest in the BWC footage produced by Defendants. *See* (ECF No. 14, Exs. A–C (on file with chambers)). Although Thomas has not responded to Defendants' Motion (ECF No. 14), in the Court's view, any challenge Thomas may level to the warrant's validity would not be sufficient to forestall summary judgment. It is clear that Thomas was arrested pursuant to an outstanding warrant issued by another jurisdiction, not for an offense under the Maryland Code, and Officer Riser was not required to evaluate the validity of the out-of-state warrant before taking Thomas into BPD custody.[3] *See Mitchell*, 872 F.2d at 579 (citing *Baker*, 443 U.S. at 145–46); (ECF No. 14-6 at 1–3); (ECF No. 14-7 at 2–3); (ECF No. 14-8 at 1–2).

In light of the Pennsylvania warrant, no reasonable jury could find that Thomas was falsely arrested or imprisoned without legal authority or justification. *See Scott*, 550 U.S. 380 (instructing that where opposing parties tell competing accounts of the underlying incident,

---

[3] Pennsylvania court records indicate that Thomas was eventually extradited to Pennsylvania, where he pleaded guilty to the charge that gave rise to the arrest warrant. *See* (ECF No. 14-10 at 3, 7–8). Although neither side has submitted a copy of the actual arrest warrant for the Court to evaluate whether it was facially valid, the fact that Thomas's Pennsylvania case was adjudicated rather than dismissed is at least some evidence that the Pennsylvania warrant was valid. More importantly, there is no claim that the Pennsylvania warrant was *not* facially valid.

courts "should not adopt that version of the facts" which is blatantly contradicted by the record for purposes of ruling on a motion for summary judgment). Accordingly, the warrant is dispositive of Thomas's common law claims for false arrest and false imprisonment, as well as his corresponding federal and state constitutional claims based on the alleged illegality of the arrest. Officer Riser and Officer Gabriel[4] are therefore entitled to judgment as a matter of law on each claim in Thomas's Amended Complaint (ECF No. 8). *See Peacock*, 199 F. Supp. 2d at 309–10 (dismissing claims for false arrest, false imprisonment, and violation of the Fourth Amendment because plaintiff was arrested pursuant to a facially valid warrant); *Mitchell*, 872 F. 2d at 579 (affirming grant of summary judgment to defendants on plaintiff's 47 U.S.C. § 1983 claim "[b]ecause Mitchell's arrest was made pursuant to a facially valid warrant").

**CONCLUSION**

Accordingly, for the reasons stated above, it is this 16th day of November 2026, hereby ORDERED that Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment (ECF No. 14) is GRANTED. Judgment shall be ENTERED for Defendants on all claims, and this case shall be CLOSED.

/s/
Richard D. Bennett
United States Senior District Judge

[4] Even absent the warrant, the Court briefly notes one other deficiency with Thomas's claims against Officer Gabriel. The BWC footage submitted by Defendants plainly shows that Officer Gabriel did not have any contact with Thomas whatsoever, nor does Officer Gabriel's name appear on the BPD incident report or citations issued to Thomas concerning his motor vehicle accident that evening. See (ECF No. 14, Ex. B (on file with chambers)); (ECF No. 14-6); (ECF No. 14-8). Officer Riser is listed as the arresting officer in the BPD incident report, he is the officer that issued Thomas the citations, and his BWC footage shows him helping take Thomas into BPD custody. See (ECF No. 14, Ex. C); (ECF No. 14-6 at 2); (ECF No. 14-8). Thus, Officer Gabriel was not a proper Defendant in this case.